**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| LARRY THORNTON and | * | |
| LYNDA GRISBY-THORNTON, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CV 111-106 |
| v. | * | |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |

**O R D E R**

Presently pending before the Court is Defendant's Motion for Summary Judgment.  (Doc. no. 13.)  Upon due consideration, this motion is hereby **DENIED**.

**I.  BACKGROUND**

**A. Factual Background**

In February 2009, medical employees at the Augusta Veterans Affairs Medical Center ("Augusta VA") conducted a colonoscopy on Plaintiff Larry Thornton in Augusta, Georgia.  (Compl. ¶ 5.) The Augusta VA employees removed and tested two of Mr. Thornton's colon polyps and subsequently informed him that they were cancerous.  (Id.)  An initial surgery was scheduled and performed on April 29, 2009.  (Id. ¶¶ 5, 7.)  Following that surgery, Mr. Thornton ran a fever, and on May 2, 2009, the Augusta VA performed a second surgery to look for potential

leakage at the site of the initial operation and perform an abdominal washout. (Id. ¶ 8; Doc. no. 17, Ex. 2 at 8.) After the second surgery, Mr. Thornton's condition worsened and he suffered additional complications. (Compl. ¶¶ 10-11.) He was placed in an induced coma and ultimately a third surgery was required. (Id.) The Augusta VA discharged Mr. Thornton on July 10, 2009 - over two months after his initial surgery. (Id. ¶ 12.) Plaintiffs allege that the first and second surgical operations were negligently performed and proximately caused a wide array of damages, such as physical pain, medical expenses, lost earnings, and lost consortium. (Id. ¶¶ 14-15.)

**B. Procedural History**

In September 2010, Plaintiffs presented an administrative claim to the Department of Veterans Affairs (doc. no. 17, ex. 2), pursuant to 28 U.S.C. § 2675.[1] Plaintiffs included the following in their administrative claim: a standardized claim form; a two page claim summary; a letter from Plaintiffs' expert, Dr. Ronald I. Gross, explaining his opinion and the basis for the claim; Dr. Gross's curriculum vitae ("CV"); and copies of pertinent medical records. (See Doc. no. 17, Ex. 2.)

On July 20, 2011, Plaintiffs filed a Complaint against Defendant under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, alleging medical malpractice by employees of the

---

[1] Section 2675 requires a claimant to first present his claim to the appropriate federal agency prior to bringing suit against the United States for money damages.

Augusta VA.   (Doc. no. 1.)   Plaintiffs attached a sworn affidavit from Dr. Gross explaining his opinions and the basis for Plaintiffs' claim (compl., ex. 1), as well as Mr. Thornton's medical records (compl., exs. 2-19).

On November 17, 2011, the United States Magistrate Judge issued a Scheduling Order, which set March 10, 2012, as the last day for Plaintiffs to furnish an expert witness report, April 9, 2012, as the last day for Defendant to furnish an expert report, and May 2, 2012, as the close of discovery.   (Doc. no. 9.)   A Revised Scheduling Order extended the close of discovery to June 16, 2012, and Defendant's expert report deadline to May 24, 2012.   (Doc. no. 11.)   However, Plaintiffs' expert report deadline of March 10, 2012, remained in full force and effect. (Id.)

On February 8, 2012, Plaintiffs responded to Defendant's first interrogatories and clearly identified Dr. Gross as their expert witness.[2]   On February 20, 2012, Plaintiffs filed initial disclosures which also clearly identified Dr. Gross as their

---

[2] The eighth interrogatory requested "the name, address, and telephone number of each person who to your knowledge, information or belief, you expect to call as an expert witness at trial," as well as the substance of the expert opinions and their bases.  (Doc. no. 17, Ex. 4 ¶ 8.)   Plaintiffs answered by stating, "Dr. Ronald Gross; please see Affidavit of same with attached CV and identifying information."   (Id.)   The record does not show that Dr. Gross's affidavit or CV were attached to Plaintiffs' interrogatory responses.   (See Doc. no. 17, Ex. 4.)   Dr. Gross's affidavit was previously attached to the Complaint (compl., ex. 1), but nothing in the record shows that Dr. Gross's CV was attached to the Complaint (see compl., exs. 1-19).

expert witness.[3]  Plaintiffs did not, however, formally furnish a document stylized as Dr. Gross's expert report by the March 10, 2012 deadline.

On June 5, 2012, Defendant filed a motion for summary judgment, contending that Plaintiffs failed to satisfy the expert disclosure requirements found in Federal Rule of Civil Procedure 26.  (Doc. no. 13.)  In the alternative, Defendant moves to reopen discovery to depose Dr. Gross and amend its own expert report.  (Doc. no. 13, Ex. 1 at 7.)  On June 28, 2012, Plaintiffs filed a response brief and statement of material facts in opposition to Defendant's motion.  (Doc. nos. 16, 17.)  In doing so, Plaintiffs provided supplemental information regarding their expert, Dr. Gross.[4]  On July 2, 2012, Defendant filed a reply brief.  (Doc. no. 20.)

## II. DISCUSSION

The first matter to address is decisional sequencing. While this case is before the Court on a motion for summary judgment, the central issue is whether Dr. Gross may be used as

---

[3] The fourth disclosure, entitled "Disclosure of Expert Testimony," stated: "See Affidavit of Ronald Gross, M.D., filed with the Complaint." (Doc. no. 17, Ex. 3 ¶ 4.)

[4] Plaintiffs attached documents from their administrative claim, which included Dr. Gross's CV. (Doc. no. 17, Ex. 2 at 10-28.)  The attached CV sets forth Dr. Gross's qualifications in detail, as well as a list of publications produced by Dr. Gross since 1979.  (See id.)  Plaintiffs also explained that Dr. Gross had not testified as an expert witness in the previous four years. (Doc. no. 16 at 2 n.1.)  Additionally, on June 21, 2012, Plaintiffs sent an email to Defendant which provided a statement of Dr. Gross's compensation in this matter.  (Doc. no. 20, Ex. 2.)

an expert witness in this case.   The viability of Plaintiffs'
claim rests upon the expert testimony of Dr. Gross because
Georgia law[5] generally requires expert testimony to establish
proximate causation in medical malpractice actions.   See Zwiren
v. Thompson, 276 Ga. 498, 500 (2003)   ("In order to establish
proximate cause by a preponderance of the evidence in a medical
malpractice action, the plaintiff must use expert testimony
because the question of whether the alleged professional
negligence caused the plaintiff's injury is generally one for
specialized expert knowledge beyond the ken of the average
layperson."); accord Fluellen v. U.S., No. 2:07-CV-044, 2008 WL
4360618, at *5 (S.D. Ga. Sept. 24, 2008) ("In Georgia, the law
recognizes a presumption that the medical care was performed in
an ordinarily skillful manner.   The plaintiff must use expert
testimony to establish proximate cause, and 'may not rely on his
own statements and lay opinions to avoid summary judgment.'"
(citation omitted) (quoting Suggs v. U.S., 199 Fed. Appx. 804,
808 (11th Cir. 2006)).   Because resolution of Defendant's motion
for summary judgment depends on whether Plaintiffs' expert is
excluded for failure to comply with Rule 26, the Court will
address the Rule 26 inquiry first.

---

[5] "An action brought under the FTCA is governed by the law of the state
where the negligent act or omission occurred."   Boatwright v. U.S., No. 2:08-
CV-030, 2009 WL 3151156, at *4 (S.D. Ga. Sept. 29, 2009) (citing Stone v.
U.S., 373 F.3d 1129, 1130 (11th Cir. 2004)).   As Plaintiffs' claim stems from
events which allegedly occurred in Augusta, Georgia, the law of Georgia
governs this action.

**A.    Exclusion of Plaintiffs' Expert**

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert evidence. Rule 26(a)(2)(A) requires parties to disclose the identity of any witness that may be used at trial to present expert opinion. Rule 26(a)(2)(B) requires that disclosure of each expert witness "must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case." The required contents of such a report are delineated in Rule 26(a)(2)(B)(i)-(vi). "A party must make these [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 37(c) governs sanctions for violating discovery rules and orders, including the consequences of failing to make expert disclosures.

Here, it cannot be disputed that Plaintiffs disclosed the identity of their expert witness in satisfaction of Rule 26(a)(2)(A) when they clearly identified Dr. Gross as an expert witness in their initial disclosures and responses to Defendant's interrogatories.[6] This disclosure was timely.[7] It is also undisputed that Plaintiffs were required to provide an

---

[6] See supra notes 2-3 and corresponding text.

[7] The initial disclosures and interrogatory responses that identified Dr. Gross as Plaintiffs' expert were provided in February 2012, prior to the March 10, 2012 deadline imposed by the Court. See Fed. R. Civ. P. 26(a)(2)(A),(D). These disclosures were also "in writing, signed, and served" as required by Rule 26(a)(4).

expert report for Dr. Gross under Rule 26(a)(2)(B) because he was not a treating physician and must be considered specially employed to provide expert testimony in the case. Therefore, the following sections address only two issues: (1) whether Plaintiffs furnished Dr. Gross's expert report to Defendant under Rule 26(a)(2)(B), and (2) the effect of any violation of Rule 26(a) under Rule 37(c).

### 1. *Rule 26(a)(2)(B): Expert Report Requirement*

Defendant contends that Plaintiffs failed to timely furnish an expert witness report that complies with Rule 26(a)(2)(B). (Doc. no. 13, Ex. 1.)   Plaintiffs argue that they timely produced an expert report on four separate occasions: (1) in September 2010, they included a letter from Dr. Gross as part of their administrative claim (doc. no. 17, ex. 2); (2) on July 20, 2011, they attached Dr. Gross's expert affidavit to the Complaint (compl., ex. 1); (3) on February 8, 2012, they referenced Dr. Gross's affidavit in response to Defendant's interrogatories (doc no. 17, ex. 4); and (4) on February 20, 2012, they referenced Dr. Gross's affidavit in their initial disclosures (id., ex. 3).

The Court rejects Plaintiffs' contention that any material in the administrative claim satisfies the expert report requirement.   The administrative claim materials were sent to William Thigpen, the Department of Veterans Affairs's regional counsel in Decatur, Georgia; they were not served upon

Defendant's counsel in this case, Shannon H. Statkus and Sanjay S. Karnik. (Id., Ex. 2.) The record of this case only shows that the administrative claim materials were filed on June 28, 2012, (id.), which was well-after the March 10, 2012 deadline imposed by the Court's Scheduling Order (doc. no. 9). There is nothing on record showing that the administrative materials were provided to Defendant's counsel prior to March 10, 2012. The Court also rejects Plaintiffs' argument that the initial disclosures and interrogatory responses constitute an expert report; these discovery documents merely referenced Dr. Gross's affidavit.

The Court will, however, consider the extent to which Dr. Gross's expert affidavit (compl., ex. 1) complies with the provisions of Rule 26(a)(2)(B). See OFS Fitel, LLC v. Epstein, Becker and Green, P.C., 549 F.3d 1344, 1362-63 (11th Cir. 2008) (considering whether expert affidavit attached to complaint contained sufficient information to comply with Rule 26(a)(2)(B)).

### a. Formal Requirements

As to the formal requirements imposed by Rule 26(a)(2)(B) and (a)(4), Dr. Gross's expert affidavit was "in writing," "prepared and signed" by Dr. Gross, and "served" upon Defendant.[8]

---

[8] Defendant attacks the inclusion of Dr. Gross's affidavit in the Complaint because Plaintiffs were not required to file an expert affidavit in federal court pursuant to O.C.G.A. § 9-11-9.1. Defendant is correct that O.C.G.A. § 9-11-9.1, which requires an expert affidavit to be filed with a complaint for professional malpractice, does not apply in federal diversity

(See Compl., Ex. 1; Doc. no. 3.)   Since Dr. Gross's affidavit was both served and filed, Plaintiffs also satisfied the Scheduling Order's requirement "to furnish" the report.   (See Doc. no. 9.)

### b. Timeliness

As to Rule 26(a)(2)(D)'s requirement that expert disclosures be made at the times that the Court orders, Dr. Gross's expert affidavit was filed with the Complaint and served upon Defendant in July 2011, which was before the Scheduling Order's March 10, 2012 deadline for Plaintiffs to furnish an expert report.   Dr. Gross's affidavit was therefore timely, at least to the extent that it contained sufficient information to qualify as an expert report.

Defendant argues in part that Plaintiffs violated Federal Rule of Civil Procedure 16(b).   Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."   Here, however, Plaintiffs do not seek to modify the Court's Scheduling Order but rather contend that their expert report, in the form of Dr. Gross's expert affidavit, was furnished prior to March 10, 2012.   As Plaintiffs have not purported to show good cause to modify the Scheduling

cases.   See Baird v. Celis, 41 F. Supp. 2d 1358, 1362 (N.D. Ga. 1999); Boone v. Knight, 131 F.R.D. 609, 612 (S.D. Ga. 1990) (Alaimo, J.).   Even though the Georgia pleading requirement does not apply in federal court, that does not restrict a federal court from considering whether an expert affidavit attached to a complaint satisfies the Rule 26(a)(2)(B) expert report requirement, which is indisputably applicable in federal court.   See OFS Fitel, 549 F.3d at 1362-63 (considering whether expert affidavit attached to complaint contained sufficient information to comply with Rule 26).

Order, only information submitted prior to March 10, 2012 will be considered timely and Rule 16(b)(4) modification is not implicated here.  When a party provides an expert affidavit that contains some but not all of the information required by the expert report rule, the Eleventh Circuit has evaluated the consequences under Rule 37(c)(1).  See OFS Fitel, 549 F.3d at 1360-63.  In short, the question here regards sufficiency rather than modification.  Whether the content of Dr. Gross's affidavit is sufficient under Rule 26(a)(2)(B) is discussed in the following section.

### c. Content Requirements

According to Rule 26(a)(2)(B), an expert report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Each subsection is discussed in turn.

Subsection (i) requires a complete statement of the expert's opinions, as well as their bases and reasoning.  Dr. Gross's three-page affidavit states that he reviewed Mr. Thornton's medical records and is familiar with the procedures

10

performed.    Indeed, he states that he has personally treated
many patients with conditions similar to Mr. Thornton's.
(Compl., Ex. 1 ¶¶ 2-3.)    Dr. Gross's expert opinion is that
employees of the Augusta VA violated the applicable standard of
care while performing Mr. Thornton's first and second surgeries.
(Id. ¶ 4.)    Specifically, Dr. Gross found that "(a) the initial
anastomosis was poorly vascularized leading to the subsequent
necrosis and anastomotic leak/disruption; [and] (b) the [second]
surgery . . . to investigate and repair the initial failure was
below the standard of care in that the reanastomosis was
performed in a soiled abdomen under less than ideal conditions
and should have been delayed by an ileosotomy and closure, or
stapling, and subsequent return to operating room at least 24
hours later after a second washout."    (Id.)    Dr. Gross further
opines that the negligent surgeries caused Mr. Thornton's
lengthy hospital stay, multiple re-operations, and current
disabilities. (Id. ¶ 5.)

     While an ideal report would provide more detailed bases for
his opinions, Dr. Gross's affidavit points out specific
instances of allegedly negligent conduct and surely goes beyond
a "brief rendition consist[ing] primarily of legal conclusions."
See Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-cv-947, 2009
WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009) (finding expert
report to be "woefully inadequate").    Indeed, Dr. Gross's expert
affidavit delivers greater detail than the expert report filed

by Defendant in this matter.[9]   The Court finds that Dr. Gross's
expert affidavit narrowly provided "sufficient specificity to
allow [the opposing party] to prepare for rebuttal or cross-
examination."   Cf. Romero v. Drummond Co., 552 F.3d 1303, 1323
(11th Cir. 2008) (finding otherwise).

Subsection (ii) of Rule 26(a)(2)(B) requires disclosure of
the facts or data considered by the expert witness in forming
his or her opinions.   Here, Dr. Gross's affidavit states that he
relied on Mr. Thornton's medical records dating from April 17,
2009, to November 5, 2009, as well as his own training and
expertise.   (Compl., Ex. 1 ¶¶ 1-2.)   Further, the pertinent
medical records were filed with the Complaint and affidavit.
(Id., Exs. 2-19.)   In short, the Court finds that Dr. Gross's
affidavit satisfied subsection (ii).   See Abdulla v. Klosinski,
No. 1:10-CV-159, 2012 WL 4429179, at *5 (S.D. Ga. Sept. 25,
2012) ("[B]revity alone does not result in automatic
invalidation of a report, and the preceding admonition against
conclusory opinions is inapt here because the facts upon which
[the expert] relied are presented alongside his opinions in a
separate exhibit.   The opinions are therefore not presented
alone and unadorned." (quotations and citations omitted)).

---

[9] On May 23, 2012, Defendant filed the expert report of Dr. Vendie H.
Hooks, III.   (Doc. no. 12.)   The expert opinion contained in the report reads
as follows: "After thorough review of the VA Medical Records of Mr. Larry
Thornton, I feel that the standard of care was met in this case." (Id.)   No
further explanation of Dr. Hooks's opinion was provided.

Subsection (iii) of Rule 26(a)(2)(B) requires the expert report to contain any exhibits that will be used to summarize or support the expert's opinions.  Here, the pertinent medical records were provided alongside Dr. Gross's expert affidavit (compl., exs. 2-19), and it could readily be inferred that those medical records would be used as exhibits.  This subsection was satisfied.

Subsection (iv) requires the expert report to contain the witness's qualifications, including a list of all publications authored in the previous ten years.  Dr. Gross's expert affidavit states that he is a practicing, licensed physician who holds the position of "Surgeon and Chief of the Division of Trauma and Emergency Medical Services at Baystate Medical Center in Springfield, MA." (Compl., Ex. 1 ¶ 1.)  This statement alone does not sufficiently establish his qualifications.  While the affidavit also states that his CV was attached (id.), the Court has examined each exhibit to the Complaint and found no CV attached (see id., exs. 1-19).  The Court's review of the record reveals that Dr. Gross's CV was not provided to Defendant until June 28, 2012, when Plaintiffs filed the administrative claim package in response to Defendant's motion for summary judgment. (Doc. no. 17, Ex. 2 at 10-28.)  The administrative claim included Dr. Gross's CV, which sufficiently set forth his qualifications and a list of his publications since 1979.  (See id.)  Of course, providing Dr. Gross's credentials on June 28,

13

2012, was untimely pursuant to the Scheduling Order's March 10, 2012 deadline and Rule 26(a)(2)(D).

Subsection (v) of Rule 26(a)(2)(B) requires the expert report to contain a list of all other cases in which the witness testified as an expert during the past four years. Dr. Gross's expert affidavit contains no such list. On June 28, 2012, Plaintiffs explained that Dr. Gross had not testified as an expert witness in the past four years. (Doc. no. 16 at 2 n.1.) This explanation was also untimely.

Subsection (vi) requires a statement of the expert's compensation in the case. Dr. Gross's affidavit does not contain a statement of compensation. On June 21, 2012, Plaintiffs sent an email to Defendant which provided Dr. Gross's compensation schedule in this matter. (Doc. no. 20, Ex. 2.) As with the previous two subsections, this disclosure was made after the Scheduling Order's March 10, 2012 deadline and therefore violated Rule 26(a)(2)(D).

### d. Conclusion

To summarize, Dr. Gross's expert affidavit substantially complied with subsections (i), (ii), and (iii) of Rule 26(a)(2)(B). However, compliance with the remaining three subsections was untimely in violation of Rule 26(a)(2)(D). This untimeliness cannot be overlooked because Plaintiffs have not shown good cause under Rule 16 to justify modification of the Court's Scheduling Order and "compliance with the requirements

14

of Rule 26 is not merely aspirational." <u>OFS Fitel</u>, 549 F.3d at 1363.

### 2. *Rule 37(c)(1): Effect of Non-Compliance*

"Nevertheless, determining that [a party] violated Rule 26 . . . comprises only half the inquiry." <u>Id.</u>  The other half of the inquiry is Rule 37(c)(1), which operates as an enforcement mechanism for Rule 26(a)(2).  It states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  "In addition to or instead of this sanction, the court . . . may impose other appropriate sanctions . . . ."  <u>Id.</u>  "'The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.'" <u>Mitchell v. Ford Motor Co.</u>, 318 Fed. Appx. 821, 824 (11th Cir. 2009) (quoting <u>Leathers v. Pfizer, Inc.</u>, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).  Here, Plaintiffs do not contend that its untimely compliance with Rule 26(a)(2) was substantially justified; rather, Plaintiffs argue that any non-compliance was harmless.  (<u>See</u> Doc. no. 16 at 5-6.)

District courts have broad discretion to determine whether a violation of Rule 26(a)(2) is harmless.  <u>Silverstein v. Procter & Gamble Mfg. Co.</u>, 700 F. Supp. 2d 1312, 1320 (S.D. Ga.

2009).     "[I]n   exercising   its   broad   discretion   to   determine whether a [Rule 26 violation] is . . . harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that  party  to  cure  the  surprise;  (3)  the  extent  to  which allowing the evidence would disrupt the trial; [and] (4) the importance of the evidence . . . ."[10]  Abdulla, 2012 WL 4429179, at *6 (quoting Two Men and a Truck, 2008 WL 5235115, at *2). Each factor is discussed in turn.

### a. Surprise

The surprise to Defendant is marginal.   As in OFS Fitel, "this is not a case of complete failure to provide information about  an  expert  witness."     549  F.3d  at  1363.     Plaintiffs identified Dr. Gross as their expert witness during discovery and prior to the March 10, 2012 deadline (doc. no. 17, exs. 3-4), and Defendant had access to Dr. Gross's expert affidavit once  Plaintiffs  filed  suit  (compl.,  ex. 1).     This  affidavit

---

[10] There is also a fifth factor: "the nondisclosing party's explanation for its failure to disclose the evidence." Abdulla, 2012 WL 4429179, at *6 (quoting Two Men and a Truck Int'l, Inc. v. Res. & Commercial Transp. Co., No. 4:08-CV-067, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008)). This factor, however, pertains only to whether a Rule 26 violation was substantially justified, as opposed to whether it was harmless. This factor is therefore inapplicable here because Plaintiffs have not argued substantial justification. The Court notes that while no substantial justification has been shown, there is absolutely no evidence of willful non-compliance or bad faith on the part of Plaintiffs, evidence which − if it existed − would warrant exclusion of the expert. See OFS Fitel, 549 F.3d at 1365; Vaughn v. U.S., 542 F. Supp. 2d 1331, 1337 (S.D. Ga. 2008).

sufficiently explained Dr. Gross's expert opinions, their bases, and the facts and data he relied on. (See id.)

Plaintiffs' failure to timely provide Dr. Gross's qualifications, publications, compensation, and cases in which he previously testified as an expert probably imposed some inconvenience upon Defendant. This type of information is considered important to attorneys preparing for the deposition or cross-examination of an expert. OFS Fitel, 549 F.3d at 1362; see also Goodbys Creek, 2009 WL 1139575, at *3 ("[F]urnishing [an opposing party] with a woefully inadequate report adversely impacts upon its ability to prepare for and conduct the deposition.").

However, the Court finds no material surprise or harm. Unlike the expert affidavit in OFS Fitel, Dr. Gross's affidavit contained meaningful analysis which Defendant could have utilized in preparing to depose Dr. Gross. See 549 F.3d at 1363. And unlike the expert report in Goodbys Creek, Dr. Gross's expert affidavit cannot be considered woefully inadequate. See 2009 WL 1139575, at *2-3 (excluding expert where the report consisted of conclusory statements "without disclosing any underlying analysis or factual basis" (emphasis added)); see also Reese v. Herbert, 527 F.3d 1253, 1264-65 (11th Cir. 2008) (affirming exclusion of expert where expert was identified but "[n]o expert report was provided" prior to the close of discovery); Sommers v. Hall, No. 4:08-CV-257, 2010 WL

3463608, at *3 (S.D. Ga. Sept. 1, 2010) (excluding expert where report "fail[ed] to identify any of his opinions . . . much less the data on which he relies"); Chapple v. Alabama, 174 F.R.D. 698, 700-01 (M.D. Ala. 1997) (finding that "failure to provide proper expert witness report [was] irritating but harmless" where opposing party was aware of general subject matter of expert's expected testimony).

The underlying purpose of Rule 26(a) disclosures is to permit opposing counsel the opportunity to adequately prepare for deposition or cross-examination and ensure that there will be no unfair surprise. Silverstein, 700 F. Supp. 2d at 1320; see also Abdulla, 2012 WL 4429179, at *6 ("Ultimately, an expert report should provide the opposing party with notice and an opportunity to prepare its case."); id. at *7 ("The bottom line is that Defendants were fairly apprised of [the expert]'s opinions by his initial Rule 26(a)(2) expert report."). Dr. Gross's expert affidavit reasonably served this underlying purpose, and there was no unfair surprise to Defendant.

### b. Ability to Cure Surprise

The next factor under the Rule 37(c)(1) exclusion analysis concerns the ability of the party against whom the expert evidence would be offered – here, Defendant – to cure the surprise. The Court agrees with Plaintiffs that this dispute could have been resolved more amicably and efficiently during discovery if Defendant had simply requested the Rule 26(a)(2)(B)

information that was not included in Dr. Gross's expert affidavit or filed a motion to compel.  In a similar situation, the Eleventh Circuit stated:

> We do not commend either party on its efforts to resolve this dispute.  [The proponent of the expert] would do well to make sure that, in the future, its Rule 26 disclosures comport with both the spirit and the letter of the rule.  Nonetheless, [the opposing party] allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, *never* moving for an order requiring any more detailed response under Rule 26. [The opposing party]'s last minute attempt to prevent [the] expert from testifying put the district court in the untenable position of having to exclude a witness identified for over two years and, in fact, deposed by the plaintiff, or continue a trial already in progress, an unpalatable solution.  In view of these circumstances, we cannot say that the district court's denial of Griffith's motion for contempt and for sanctions was an abuse of discretion.

Griffith v. Gen. Motors Corp., 303 F.3d 1276, 1283 (11th Cir. 2002) (emphasis in original).

If Defendant had informed Plaintiffs of the inadequacies of its expert disclosure during discovery, Plaintiffs would clearly have been required to supplement Dr. Gross's expert affidavit. See Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . . ).[11]  Instead of attempting to resolve the

---

[11] Due to the potential for abuse, an expert "report that suffers from 'a major omission' cannot be cured by use of supplementation." Sommers, 2010 WL 3463608, at *3.  Here, there was no major omission that would have prevented timely supplementation.  The Court also notes that once Plaintiffs

Rule 26 dispute during discovery and cure any surprise or harm it felt it had suffered, Defendant moved for summary judgment - effectively seeking the harshest sanction available.

In the alternative, Defendant moves the Court to reopen discovery to allow Defendant to depose Dr. Gross and supplement its own expert report. (See Doc. no. 20 at 12-13.) The Court finds that this alternative relief is a more appropriate cure to any surprise or harm that Defendant allegedly suffered due to Plaintiffs' partial non-compliance with Rule 26(a)(2)(B). See OFS Fitel, 549 F.3d at 1351, 1365 (reversing district court that refused to reopen discovery where Rule 26 non-compliance was substantially justified); Vaughn, 542 F. Supp. 2d at 1337-38 (reopening discovery to alleviate any harm caused by untimely expert disclosure); see also Fed. R. Civ. P. 37(c)(1)(C) (stating that "[i]n addition to or instead of this [exclusion] sanction, the court . . . may impose other appropriate sanctions").

In summary, Defendant (1) had the ability to cure its alleged surprise during discovery by requesting supplemental expert information and (2) has proposed more appropriate relief to cure the alleged surprise or harm at this time. These facts counsel against exclusion of Dr. Gross and in favor of reopening discovery.

---

were confronted with the motion for summary judgment, they readily provided the previously undisclosed Rule 26(a)(2)(B) information. See supra note 4 and corresponding text.

### c. Disruption of Trial

Assessing the extent to which Dr. Gross's expert testimony would disrupt the trial, the Court finds that there would be no disruption whatsoever.  See OFS Fitel, 549 F.3d at 1364-65 (stating that "most importantly, no trial date for the case had been set or was imminent" and reversing district court that refused to reopen discovery).  As in OFS Fitel, this case has not been placed on the trial calendar and no trial is imminent. Now that Plaintiffs have provided all of the information required under Rule 26(a)(2)(B), there is ample time for the Court to reopen discovery and allow Defendant to more thoroughly prepare its case without greatly disrupting the efficiency of the litigation.  In short, this factor counsels against exclusion of Dr. Gross.

### d. Importance of the Evidence

Dr. Gross's expert testimony is extremely important to this case.  Indeed, if Dr. Gross was excluded and his expert affidavit stricken from the record, Defendant would be entitled to judgment as a matter of law.  See Zwiren, 276 Ga. at 500 (holding that Georgia law requires expert testimony to establish proximate cause in medical malpractice cases); Fluellen, 2008 WL 4360618, at *5 (same); see also OFS Fitel, 549 F.3d at 1351, 1365 (reversing exclusion of case-dispositive expert); Vaughn, 542 F. Supp. 2d at 1335, 1338 (refusing to impose "harsh sanction" of excluding case-dispositive expert); Abdulla, 2012

21

WL 4429179, at *4, *6-7 (same).   As Dr. Gross's testimony is crucial to Plaintiffs' case, this factor counsels against exclusion.

### e. Conclusion

Considering the particular factual and procedural circumstances of this case, the Court finds that Plaintiffs' partial non-compliance with Rule 26(a)(2)(B) caused no discernible harm to Defendant.   Defendant should not have been surprised given that Plaintiffs identified Dr. Gross as their expert prior to March 10, 2012 and his expert affidavit sufficiently explained his opinions, their bases, and the facts he relied on.   While the parties should have resolved the issue during discovery, there is still time available to reopen discovery for Dr. Gross's deposition – a more appropriate cure to any prejudice Defendant allegedly suffered.   Reopening discovery is especially appropriate given that Dr. Gross's testimony is crucial to the just resolution of this case.   In summary, Plaintiffs' partial non-compliance with Rule 26(a)(2)(B) was harmless and therefore does not warrant exclusion of Dr. Gross under Rule 37(c)(1).   The Court will, however, grant Defendant's alternative request for relief and reopen discovery for the limited purpose of deposing Dr. Gross and supplementation of Defendant's expert report.

**B.    Summary Judgment**

   *1. Standard*

   Summary  judgment  is  appropriate  only  if  "there  is  no
genuine  dispute  as  to  any  material  fact  and  the  movant  is
entitled  to  judgment  as  a  matter  of  law."   Fed.  R.  Civ.  P.
56(a).  Facts are "material" if they could affect the outcome of
the  suit  under  the  governing  substantive  law.   Anderson  v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must
view  the  facts  in  the  light  most  favorable  to  the  non-moving
party,  Matsushita  Elec.  Indus.  Co.  v.  Zenith  Radio  Corp.,  475
U.S.  574,  587  (1986),  and  must  draw  "all  justifiable  inferences
in  [its]  favor."   U.S.  v.  Four  Parcels  of  Real  Prop.,  941  F.2d
1428,  1437  (11th  Cir.  1991)  (en  banc)  (internal  punctuation  and
citations  omitted).

   The  moving  party  has  the  initial  burden  of  showing  the
Court,  by  reference  to  materials  on  file,  the  basis  for  the
motion.   Celotex  Corp.  v.  Catrett,  477  U.S.  317,  323  (1986).
How  to  carry  this  burden  depends  on  who  bears  the  burden  of
proof  at  trial.   Fitzpatrick  v.  City  of  Atlanta,  2  F.3d  1112,
1115  (11th  Cir.  1993).   When  the  non-movant  has  the  burden  of
proof  at  trial,  the  movant  may  carry  the  initial  burden  in  one
of  two  ways  —  by  negating  an  essential  element  of  the  non-
movant's  case  or  by  showing  that  there  is  no  evidence  to  prove  a
fact  necessary  to  the  non-movant's  case.   See  Clark  v.  Coats  &
Clark,  Inc.,  929  F.2d  604,  606-08  (11th  Cir.  1991)  (explaining

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the

24

alleged evidentiary deficiency." Id. at 1117.  The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiffs notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 15.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### 2. Analysis

Defendant argues that even if the Court considers Dr. Gross's expert affidavit, the contents of the affidavit do not establish a genuine dispute of material fact as to Defendant's negligence under Georgia law.  (Doc. no. 20 at 10.)  The Court disagrees.

The FTCA allows the United States to be sued for negligence in the same manner as a private individual and provides that the substantive law of the state where the allegedly negligent act or omission occurred governs the action.  Fluellen, 2008 WL 4360618, at *5 (citing 28 U.S.C. §§ 2674, 1346(b)(1)).   Here,

Georgia law applies because Mr. Thornton's surgeries were performed in Augusta, Georgia.

To establish medical malpractice liability under Georgia law, the plaintiff must establish three essential elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." Boatwright, 2009 WL 3151156, at *4 (citing Zwiren, 276 Ga. at 499). Here, Defendant does not appear to contest the duty element, but does challenge Plaintiffs on the latter two elements. Each element is discussed in turn.

### a. Standard of Care and Breach

"'In Georgia, the reasonable degree of care and skill required of physicians is that which is ordinarily employed by the profession generally and not such as is ordinarily employed by the profession in the locality or community.'" Id. (quoting West v. Breast Care Specialists, LLC, 290 Ga. App. 521, 523 (2008)). "Georgia law recognizes a presumption that the medical care was performed in an ordinarily skillful manner, and the 'burden is upon the plaintiff to show a want of due care or skill' or diligence." Id. (quoting Bowling v. Foster, 254 Ga. App. 374, 377 (2002)). "It is insufficient to show that an expert witness 'would have done something differently.'" Id. (quoting Bowling, 254 Ga. App. at 377). "Therefore, a plaintiff

26

is usually required to offer expert medical testimony to the effect that the defendant-doctor failed to exercise that degree of care and skill which would ordinarily have been employed by the medical profession generally *under the circumstances*." Bowling, 254 Ga. App. at 377 (emphasis in original) (quotations omitted).

Here, Dr. Gross's sworn affidavit states that he based his expert opinions upon his review of Mr. Thornton's medical records, as well as his training and experience as a licensed surgeon in the field of emergency medical services. (Compl., Ex. 1 ¶¶ 1-2.) He states that, having performed surgery on and treated many patients with similar conditions, he is familiar with the treatment and procedures provided by the Augusta VA to Mr. Thornton and the applicable standard of care. (Id. ¶ 3.) Dr. Gross asserts that "the initial anastomosis was poorly vascularized leading to the subsequent necrosis and anastomotic leak/disruption." (Id. ¶ 4.) As to the second surgery to investigate and repair, he asserts that "the reanastomosis was performed in a soiled abdomen under less than ideal conditions and should have been delayed by an ileosotomy and closure, or stapling, and subsequent return to operating room at least 24 hours later after a second washout." (Id.) Dr. Gross concludes that these two surgeries fell below the applicable standard of care. (Id. ¶¶ 4-5.)

Dr. Gross's sworn statement does not merely show that he would have performed the surgeries differently. Rather, he asserts that the treatment of Mr. Thornton fell below the applicable standard of care for colon surgery and highlights specific negligent acts performed by the Augusta VA. Thus, there is a genuine dispute regarding whether the Augusta VA breached the applicable standard of care.

### b. Proximate Causation

Under Georgia law, the plaintiff must use expert testimony to establish proximate causation in medical malpractice cases. Boatwright, 2009 WL 3151156, at *4 (citing Zwiren, 276 Ga. at 500). "'[R]easonable degree of medical certainty,' while an *acceptable* means by which an expert may express the confidence the expert has in the conclusion formed and the probability that it is accurate, is not the *required* standard. Georgia case law requires only that an expert state an opinion regarding proximate causation in terms stronger than that of medical possibility." Zwiren, 276 Ga. at 503 (emphasis in original).

Here, Dr. Gross opines that the allegedly sub-standard surgeries "resulted in Mr. Thornton's lengthy hospital stay, multiple re-operations, and current disabilities." (Compl., Ex. 1 ¶ 5.) Moreover, he states that all of the opinions expressed in the affidavit were "given within a reasonable degree of medical certainty." (Id. ¶ 1.)

Dr. Gross's expert affidavit states an opinion on proximate causation in acceptable terms that go beyond medical possibility. Therefore, the Court concludes that there is a genuine dispute regarding whether the Augusta VA's care proximately caused Mr. Thornton's injuries. Because Plaintiffs have produced sufficient evidence from which a reasonable jury could determine that the employees of the Augusta VA were negligent and proximately caused Mr. Thornton's injuries, Defendant is not entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (doc. no. 13) is **DENIED**. However, Defendant's request for alternative relief is **GRANTED**. Discovery is hereby **REOPENED** for **sixty (60) days** from the date of this Order for these two limited purposes: (1) the parties are **DIRECTED** to arrange and carry out Defendant's deposition of Dr. Ronald Gross, and (2) Defendant is **DIRECTED** to supplement and furnish its expert witness report consistent with this Order and Rule 26 of the Federal Rules of Civil Procedure. The parties are further **DIRECTED** to notify the Court once these two limited purposes are accomplished. At that time, the Court will set a date for trial and issue an order and notice of pretrial proceedings. All other provisions of the Court's prior

Scheduling Orders (doc. nos. 9, 11) not revised herein shall remain in full force and effect.

**ORDER ENTERED** at Augusta, Georgia, this ___5th___ day of February, 2013.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA